Case No. 16-1354, et al., United Parcel Service, Inc. Petitioner v. Postal Regulatory Commission. Mr. Lampkin for the petitioner, Mr. Sheehy for the respondent. Thank you, and may it please the Court. Jeff Lampkin on behalf of UPS. I'd like to reserve five minutes for rebuttal. The Commission concedes that its approach to attribution almost certainly underestimates the inframarginal costs caused by each product. That's because it attributes only the minimum inframarginal costs the product could possibly have incurred. That minimum possible approach is inconsistent with the statute, it's nowhere reconciled with the express statutory purpose conceded by the Commission, which is ensuring fair competition on a level playing field, and it is altered. Well, but the statute's more complex than that. The statute requires for any allocated costs that they be through reliably identified relationships, and the Commission's view is they've allocated all the inframarginal costs they can through a verifiable method, and that UPS's proposed system, which allocates more, rests on a series of unverifiable assumptions and requires guesswork. That's their theory. It's not that it's minimum, it's that they allocated all they could through a verifiable methodology. Well, Your Honor, So why does that violate the... I understand you may argue that that's arbitrary capricious, but why does that violate the statute? Your Honor, the statutory phrase, it has to be reliably identified causal relationships, and if the Commission chooses a relationship that is so narrow that it excludes a category that Congress wanted to include, then it violates the statute. Well, what if the statute says Congress wanted to include more than a minimum amount of inframarginal costs? And the statute uses the phrase that says that costs attributable includes direct and indirect costs. An indirect cost is a well-understood term. It means not just if it includes costs that are caused by two products such that you cannot unequivocally say that it's caused by one or the other. If it's not unequivocal, if it is unequivocal, it's a direct cost. And the Commission simply excludes every cost that's not unequivocally caused by one product. Well, it doesn't. It doesn't because it's included some inframarginal costs. Right, but only those inframarginal costs that are unequivocally caused by one product. For example, if you have two products that are both causing a cost, and you remove one product, the cost goes away, the Commission will attribute that. Because it's unequivocally caused by that product. The product goes away, the cost goes away. But if you have to eliminate both products, the Commission will not attribute that cost. Well, that's not the Commission's theory. The Commission believes it is doing that. I mean, take for example, suppose you have a mail truck that is carrying parcels and letters and uses 20 gallons of gas. Those are common costs, right? Correct. Okay, well, the Commission is attributing the amount it can verifiably allocate to, say, the parcels, say five gallons. But those are still common costs. Actually, Your Honor, that's not correct. Why? When a postal truck actually leaves on its route, the only cost that gets attributed is the time it takes for the postal carrier to reach into his bag and pull out the package and put it in the mailbox. That gets attributed. If you have a postal truck that's carrying just parcels, just five-pound parcels, one could think that would be attributed. The Commission says that its methodology, quote, does not exclude all common costs, but only those, only those, without a reliably identifiable causal connection. Right. The Commission, of course, doesn't identify... Is that false? It is incorrect, Your Honor. The Commission doesn't identify any common costs excluded. And the carrier, and the city time carrier example that Your Honor has included, shows exactly that. If you have a truck full of five-pound parcels, a hundred of them, and there's only five-pound parcels, all that would be attributed. But if you put one first-class letter on top, none of it gets attributed. That just doesn't make sense. That's not the way I read the record. Right. And the Commission, I mean, one of the things that the Commission has done in response to the petition of your clients is attribute the increment of inframarginal costs that are at the right end of the curve. Because it says those, we can reliably attribute to the bringing on or not of this product class. Right. And those are shared costs. Those on the right end of the curve, they are not going to be shared costs. They're not joint costs in a sense because they go away and they can be unequivocally... You're mixing apples and oranges there. They go away. That portion of the shared costs goes away when that product is taken offline. But that doesn't answer what the underlying character of those costs is. Yes. So they may rely on shared inputs. So if the court's referring to, for example, the idea of long-distance transportation, which is cubic foot miles, those are costs that are common inputs across a lot of products. And you can attribute those to individual products. But that's because if you pull product volume out, that cost goes down. And so you know that particular products are or are not using those costs. But when you go to attribute the costs and the way the Commission does this, it only goes to the very far right of the curve, as you said, Judge Billig, and it uses only the minimum number that could possibly be caused. And it never reconciles that choice with, for example, the purpose of the statute. The purpose of the statute, the Commission sees, is fair competition. Not pure economic efficiency, but fair competition. But it's also competition. And so it sounds like your position is taking us back to before the greeting card case where, I mean, you surely could, and your brief does a very able job of describing how one could take all the inframarginal costs and just accumulate them all and then allocate them proportionally to all the products. But it sounds like what the Commission is doing here is trying to take advantage of competitive opportunities that the Postal Service has. So it's saying we have untapped capacity given what we're already doing, including with our market-dominant products, and we should be thinking about how we could competitively innovate and offer additional things. And nobody says the Postal Service should not be able to compete. These are genuine costs. They're real costs. They have to be recovered somewhere. If they're not recovered here, they're going to have to come from market-dominant products, or the Postal Service is going to have to lose money, which is exactly what it's been doing for ten years. It is not fair competition for UPS to be facing a statutory monopolist who gets advantages not merely by advantage of its statutory monopoly in one area, but they can lose money year after year after year because it's not recovering its costs. But it's turning back to the example of statutory purpose. One of the things that's most problematic about the Commission's decision... I'm sorry, I missed the gist of that point. How would your proposal make the loss of the Postal Service's losses better? Well, it simply means that the Postal Service, when it has competitive products, must cover the full costs of those competitive products in the price of each product. But that's not... And that means not just the bare minimum at the end. Excuse me. I keep going back to the statute. That's not what the statute says. The statute says only costs that can be verifiably connected to the product. That's correct. You keep ignoring that provision of the statute. Not at all, Your Honor. No? The Commission has to choose certain causal relationships. Right. If it chooses causal relationships on such a narrow basis as to overexclude, it's going to end up with too low an attribution. And that's exactly what we think. But you don't have any... You can't point to any statutory language that incorporates this too low. In other words, the way you read the statute, it's... There must be... It can allocate costs through a causal relationship that's verifiable unless it's too low. No, Your Honor. That's not in the statute. Well, Your Honor, I think if I could turn the Court to page 1060, the appendix, that part of the opinion, that actually shows exactly what's going on here. The Commission says at that point, any overstatement of inframarginal costs as part of those costs that are attributed to products runs contrary to prior legislative intent concerning cost attribution. Now, one thing it doesn't say, it doesn't say, why isn't underattribution equally problematic? In the legislative history it cites, in footnote 61, in the small text you go down below, it urges the Commission to reach a technically correct result, placing accuracy above achieving a particular outcome of higher or lower attribution. The Commission's done exactly the opposite of legislative history here. It has targeted lower attribution. Well, can I ask you this question about the statutory language? So suppose on the definition of cost attributable the Commission reaches the conclusion, and I don't think they have reached this conclusion, just suppose that they say that indirect costs, we'd love to include them and attribute them, but there's just no reliably identified causal way to do it, that we just can't find one, and therefore we're keeping indirect costs out. The argument could be made in that situation that that's perfectly consistent with the statute. Even though you aim to include indirect costs, they've just determined that there's no reliably causal way to do it. And then the way you account for that, because I think you're right, at that point things become quite low, and the statute accounts for that because it doesn't deal with it in 3633A2, it deals with it in 3633A3, and says, well, then there's other ways that you can boost up the costs to get closer. But with respect to A2, you've got to have the reliable causal relationship. And there's two pieces to that question, Judge Srinivasan. The first part is, what the Commission basically says, it looks like a statute that effectively says you have to have reasonably sized domestic dogs and cats, and it says 50 pound minimum. That's wrong because that's going to include all the domestic cats. At the very least, if it's going to choose a pound minimum that excludes all domestic cats, it's going to have to explain why it's doing that. And that's what's missing here. There's no explanation why it's going to choose the minimum as opposed to targeting accuracy. I thought their explanation is that it's just not, they don't have the reliable causal nexus for everything that's not included. And the reason they don't think there's a reliable causal nexus is because you don't know the ordering of operations, which comes first and which comes last. But that's exactly true. That's not the only reason. They also, because they don't operate without the market-dominant products, they don't have data on what the actual inframarginal costs are at the very left side of the curve, closer to zero. So I should distinguish two things here very quickly. One is whether the Commission has justified its choice, its chosen numbers, versus why it rejected UPSs. But even with respect to, I think, Judge Pillay referring to the elasticities issue, even there, it's common ground. Everyone agrees you don't even need elasticities. You don't need that at all if, for example, it's a fully variable cost or you know your fixed costs. But the Commission doesn't even consider for a moment the idea of at least attributing those costs where it doesn't need the elasticity demand because you do know it's all variable or you don't or you can subtract your fixed costs. Turning back to your question, Judge Srinivasan, the Commission doesn't say, hey, we're going to use the bare minimum under A2 because we're going to make up the difference to you under A3 for fair attribution. And it doesn't say that for a reason. It doesn't want to bind itself to that result. It's done exactly the opposite historically. Historically, 30% of attributable costs are attributed to competitive products. But when you get to the proper share requirement under A3, it's 5.5%. That's an enormous difference. The problem in this case is, although we can argue back and forth about what the Commission's choices were, at the bottom it's very hard to find anywhere where the Commission actually addresses the language of the statute, such as the meaning of indirect costs. So you have a question. Well, I'd be interested in hearing your answer to Judge Srinivasan's first question, which is the Commission says we want to do what the statute says and we want to allocate indirect costs. We've done a detailed examination and we can't verifiably link any of that. We can't meet the statutory standard, reliably identify causal relationships, so we're not going to include them. That would not violate the statute, right? I think there's a serious tension if you're reading a piece of the statute. No, no, no. The question is, would that violate the statute? I think it would. Why? Because Congress specifically included indirect costs. But it says, but the statute says, it says the direct and indirect costs, and the verifiable language modifies indirect also. That's correct, Your Honor. So if they can't do it through any verifiable causal connection, then I don't see the basis for your argument that it would violate the statute. At the very least, the Commission has to look very hard and try hard to make some way to include it. Well, that's part of my hypothetical. They did everything they could. They really worked at it. They hired a lot of really expensive economists and accountants, and they just couldn't come up with a reliable system. It just rested on too many assumptions and guesswork, and so they just said, look, we can't in good conscience do this because we can't defend the methodology. So we're not going to include indirect costs. What's your argument that that would violate the statute? So, Your Honor, the two reasons they gave for not attributing any information to Congress. You don't want to answer my question, do you? Pardon? You don't want to answer my question? I think that the rationales they gave don't make sense. They don't make economic sense. They don't make legal sense. Okay, that's your arbitrary and capricious argument. I get that. If the Commission says we can't allocate these indirect costs and that analysis is arbitrary and capricious, then you win. But I was operating on the assumption that their methodology is not arbitrary and capricious, that it's perfectly sound, and that you don't even disagree with it. And they conclude because of this methodologically sound system of trying to allocate these costs, they can't, so therefore they're not going to. And I'd still like to know why we're not going to allocate indirect costs, why you think that would violate the statute. I see that hypothetically, if they had scoured the earth and included everything, then I think in the end you might have a statute that made no sense and the agency has to do what it has to do with it. And that would be lawful. Okay, right. But is part of your... So then how can it be unlawful, how can it be lawful for them to exclude all indirect costs through a methodologically sound system but to include some but not all through the same methodologically sound system? Do you know what I mean? Methodology. No, it's here, it's the same hypothetical. Suppose you agree with me that their methodology is sound, that they've come up with the best system for allocating costs, and that they can only allocate 40% of indirect costs. That wouldn't violate the statute, right? So if they had a good system and they attributed 40% of indirect costs, that would be consistent with the statute, correct? But the problem we have is the Commission doesn't do that. It has chosen a standard, which is a standard of unequivocal causation, and that's the opposite of what it does. Is the word unequivocal, is that your gloss on it or is it coming from something else? That's from the CAPL Commission, Your Honor, which was one of the commissions that studied this and it appears in the legislative history. It's one of two definitions. But, again, the Commission doesn't tarry with the definitions here. It just doesn't look at the statute, and it feels like the Commission just hasn't made the transition. Can I just ask you one terminological question that's bound up? You only have one in this case? Yeah, yeah. I have one. Maybe it has 17 subparts. That's a lot fewer than I do. So part of the confusion here, at least in my own mind, is that not that the briefs are confusing. The briefs are excellent on all scores, but is that there's four categories of IN in costs. There's incremental, inframarginal, institutional, and there's one more, which we're just talking about now. There's another one. Inframarginal, institutional, incremental, and then? Indirect. Indirect. Thank you. Indirect, the one we're talking about. And they all kind of overlap to some extent. They don't overlap to some extent. One thing I'm fixated on right now is this. As I understood the way you started your argument on the statute, it was that the problem with the Commission's methodology is that indirect basically doesn't get captured. And the way you showed that is you said, look, if you look at the curve that has inframarginal, basically none of that is getting covered. Maybe some tiny sliver of inframarginal is getting covered, but basically none of it is. But it seems to me that, as I understand the Commission's argument, that's a mismatch because they don't think indirect is inframarginal. In fact, they think indirect and inframarginal are mutually exclusive. And you're suggesting that the reason we know indirect isn't being captured is because they're capturing hardly any of inframarginal. Am I right in understanding that you – Judge Unamason, that's not actually our argument. There are indirect costs in inframarginal costs, but it's not that the term indirect coincides with inframarginal. Okay. Indirect costs are costs that are caused by two products jointly, such that you can't unequivocally say it's caused by A or B. So that's –  That's what I thought. I thought you're saying that the Commission is – as soon as something is jointly caused, it is not reliably attributable, and therefore they're not going to count it. And you're saying if that's – if that's the reason why they're saying we have no reliable way to count that, that that's way too, for want of a better term, lazy. That, in fact, just because something's jointly caused doesn't – and by that token, indirect, that doesn't put it off the map. But I don't actually – I understand that that's your position, but I don't take them to have said that just because it's jointly caused, it's – it can't – we can't trace the causation. And in my view, I see some of the costs that are in the green and some of the costs that are in the red over on the right in their chart – they're just only willing to look at those jointly caused costs that are in the marginal – meaning if we got rid of this, they would go away. If we add this, they come back – box. I think even Intervenors Council – or Intervenors expert, Panzar, who developed this incremental cost test and recommended it, actually conceded it does not include joint costs. And I would direct the Court just to pages 716 to 717 of Amazon's reply, and to Panzar's statements at SEPJA571. I think that would probably be very enlightening. But if I could just turn really quickly, the one problem we really have in talking about this is the Commission hasn't confronted what the statute means. The Commission looks at the legislative purpose, ensuring fair competition, and then says our test, incremental cost, is not designed to ensure fair competition. Then what is? The Commission is stepping back from that. It feels like the Commission has never made the transition from being the Postal Rate Commission, which recommends outcomes and disputed rate proceedings, to the Postal Regulatory Commission, which looks at the words of the statute, looks at the statutory purpose, and reconciles the choices it makes with those elements. If there are no further questions, I'm well beyond my rebuttal. Thank you very much. Thank you. May it please the Court. Mike Shee for the Postal Regulatory Commission. As the panels recognize, this case concerns the Commission's method of calculating what the statute terms costs attributable, which are those costs that bear a, quote, For more than four decades, the Commission has determined that the only such costs, apart from the minimal fixed costs that are specific to a product, are marginal costs, and the Supreme Court endorsed that determination in the 1983 greeting card case. The challenged orders are fully consistent with the Commission's long-held view of what a reliably identified causal relationship entails. The order simply refines the methodology the Commission uses to calculate marginal costs by including some inframarginal costs not included in the previous method of calculation. So as a result, the Commission now deems more costs to be costs attributable than it did under the previous methodology. And because that decision is both reasonable and lawful, the petition for review should be denied. So can I ask you a question about the statutory term indirect costs? So where in that explanation you just gave does indirect costs fit in? And in particular, there was a prior methodology under which the attributed costs consisted of product-specific fixed costs plus volume variable costs. And then there's an increment that's been added on now where it includes not only those two, but also that share of inframarginal costs that are part of incremental costs. Am I right so far? So far, so good. Okay. Then there's also the statutory term indirect costs. Yes. And the question I have is, your position is that at least some indirect costs are being attributed. Yes, to the extent that there is a reliably identified causal relationship between that indirect cost and the production of a product. Right, so there is at least some indirect costs that are being attributed because there's a requisite causal relationship. Right. Was that always the case? Yes. Okay, so the addition of that sliver of inframarginal that fits within incremental doesn't treat with indirect because some share of indirect costs have always been indirect. So I think that question gets to the heart of UPS's confusion about what the commission has actually done. So UPS's statutory argument essentially attempts to equate the term indirect costs with the term inframarginal costs. And UPS says one must equal the other. But that's not how the commission has interpreted the term indirect costs. So since the mid-1970s, the commission has construed that term to refer to what it has inelegantly called piggyback costs. And so these are costs that do not vary with a particular product but do vary with other costs that vary with the base product. So the best example of this, Your Honor, is supervisors. So the number of supervisors doesn't vary directly with the number of letters produced. But the number of supervisors does vary with the number of employees who actually do the line-level distribution. And just so I'm understanding this hypo because I know it's in your brief. Right. Maybe it's not even a hypo, but... No, this is what we do. This is what we have done since the 1970s. The supervisors that you're talking about are not supervisors that are linked to and only to one product. Exactly. They're supervisors that cut across products. Right, so the supervisor doesn't just deal with the folks who are distributing letters. The supervisor also deals with the folks who are sorting parcels and the folks who are sorting flats. So then if I can follow up with this question, which also goes to terminology and the methodological explanation you were just elucidating. So your view of UPS's argument is that they're conflating indirect with inframarginal. Yes. That's your view of theirs. They may have a response to that and say no, we're not, but that's your view of theirs. Yes. As I understand your view of your own argument, you think that inframarginal and indirect, in fact, are mutually exclusive. That indirect is just a different category than inframarginal because inframarginal only consists of those costs that directly vary with volume, whereas indirect, those indirect costs that are being attributed don't directly vary with volume. They may indirectly vary with volume through some extra step like you go from the volume to the line employee to the supervisor. You've got the line employee in between. I don't think mutually exclusive is the right answer. You don't think mutually exclusive is the right answer. They would be overlapping, no? They're overlapping, absolutely. Because then your brief says, let's see, I'm looking at page 51 of your brief. Let me just find the right spot. I thought I read on, yeah, at the top of the, in the partial paragraph at the top of the page, at the end of that paragraph, the last sentence says, because indirect costs are not inframarginal, the commission's revised cost attribution method will not affect their attribution. I'm sorry for the confusion. Let me try to just explain what we meant by that admittedly opaque statement. So the commission thinks of indirect costs and inframarginal costs as two different categories. The definition of inframarginal costs are those costs that are saved due to economies of scope and scale. They may be indirect. They may not be indirect. It's just difficult to figure out how to give you an example of what an inframarginal costs are because inframarginal costs are by definition determined by an equation. And aren't, I'm sorry, but aren't volume variable costs also potentially including direct and indirect costs? Yes, you're right. Okay. And so volume variable, so one question is, is the cost a direct or indirect cost? And the other question is, you know, how is there, if there is a causal relationship between that cost and the production of a product? So UPS wants to suggest that all inframarginal costs must be construed as indirect costs. And as I think our previous conversation illustrated, that's just an incorrect reading of the statute or at a minimum, the statute does not unambiguously disclose that meaning. But even if UPS is correct that indirect costs includes all inframarginal costs, which we've just said is not the correct interpretation of the statute, UPS still can't win the petition because the commission has demonstrated that its proposed methodology has two serious analytical flaws. And it might help for me to describe those analytical flaws. Can you, in the course of that, can you just explain to me that statement in a brief, because indirect costs are not inframarginal, is what you mean by that? Because indirect costs may or may not be inframarginal? Yeah, so I'm so sorry, Your Honor. The purpose of that statement in the brief is to illustrate that the question of what is an indirect cost is very different from the question of what is an inframarginal cost. That's all that sentence in the brief was getting. Got it. And the reason why UPS can't prevail, even assuming its reading of the statute is correct, is because its proposed method of allocating inframarginal costs suffers from two primary defects. The first defect is that UPS needs to figure out the shape of the entire cost curve. And the method it has adopted for doing that is this model by an expert named McBride who adopts the constant elasticity assumption. Well, the Commission explained, and this is at pages 1058 and 59 of the Joint Appendix, that the constant elasticity assumption is difficult to verify because, you know, who knows what the shape of the cost curve at very low volumes are. The Postal Service, as the Commission further explained, has never experienced that level of volume, you know, not even in the days of the Pony Express did the Postal Service deliver one piece of mail. But I guess if you know your total costs, why does it matter? Because you're not really extrapolating in terms of a curve. Once you're no longer distinguishing between the, you know, product A, product B, and product C along the inframarginal cost curve, if you're just saying, we're gonna put them all in one box, we're gonna stir them all together, and we're gonna allocate them proportionally to products, it doesn't really matter what the curve looks like because you do know total costs and you can just proportionally allocate them to products that way. So the Commission addressed that argument too, which UPS did bring up. And the reason the Commission said that that was a difficult way to consider is because the total cost category includes everything. It could include product-specific fixed costs. It could include, you know, just general common fixed costs. It can include a whole bunch of different types of costs. And it's very difficult to disentangle all of those costs such that the only result of a subtraction Your Honor is positing is the total amount of inframarginal costs incurred, right? And so that reasonable explanation of why the Commission's view is that UPS's proposal is methodologically flawed, Warren Stafford. And you couldn't pull out all the costs that are, the fixed costs that are directly attributable to a product and say, we're gonna do those separately and then everything that isn't, we're just gonna cut that up and allocate it proportionally. It sort of seems like that's where their proposal is driving. Right. And, you know, Your Honor, even if you disagree with the Commission as to that, as to the possibility of pulling out the various costs, there's still the second problem with UPS's methodology, which is the distribution of this hypothesized bucket of inframarginal costs. And here UPS proposes to use the Postal Regulatory Commission's existing distribution keys. And distribution keys, under UPS's view, can be used to divide up proportionally all of the inframarginal costs incurred. Well, the problem with the use of distribution keys in this context, as the Commission explained, this is on pages 1069 and 1070 of the Joint Appendix, is that it's impossible to know where on the curve a particular product falls. The core assumption of the use of distribution keys is that there's no principled way to determine where along the curve any individual mail piece belongs, so we'll just assume that it's essentially random. And the Commission said there's no reason to assume it's essentially random. And there's no way to test for this because there is no such data. But isn't that the nature of your economic disagreement? I mean, I take it to be they're saying, yeah, it's random, that's why you're summing and then proportionally dividing up, no problem. And you're also saying we don't care about ordering but as a theoretical matter, what we're asking is what's the marginal contribution of this product to cost? And that's the question we're asking. So it seems like neither of you really cares about ordering. Your position isn't a position of ordering, it's a position about, theoretically, what question are we asking? It's always last, in your view, because what you're asking is a marginal cost question. No, Your Honor. So it might help for me to back up and just disaggregate the two questions here. The first question is, are all inframarginal costs causally related to the production of a product? So that's question one. Question two is, assume the answer to that question is correct. Does UPS's method of attribution distribute those costs reliably? So far, we've been talking about the second half of that question. But your question, I think, goes to the first half of the analysis, which is, are all inframarginal costs caused by a particular product in a manner that requires attribution under the statute? And the commission addressed that question, too. And this is what I was getting at with respect to the greeting card case. And the commission says, it's simply not the case that all inframarginal costs must be attributed because not all inframarginal costs are caused by the production of a product. Rather, only those inframarginal costs that would disappear if the Postal Service stopped making that product are properly considered to be caused by the product for purposes of the statute. So only those costs need to be attributed at all. And that share is picked up by incremental costs? Yes. So the incremental cost test, I'm going to use a phrase that I promise I will not use, picks up the marginal inframarginal cost, as it were. And what I mean by that is it's the portion of inframarginal costs that goes away when a particular product is not made. And so that is fully consistent with the commission's view of causation. And to underscore the point, the previous methodology that the commission adopted, this is the product-specific fixed costs plus volume variable costs, did not contain any attribution of inframarginal costs at all. This was challenged to the Supreme Court under the functionally identical costing statute. And the Supreme Court said the commission's understanding of causation was reasonable in Warren's deference. There is no difference between the commission's understanding of causation in this context and the commission's understanding of causation under the conceitedly less accurate way of cost attribution that the Supreme Court endorsed in the greeting card case. If anything, as I said earlier, the commission is actually adding more costs to the pot that get attributed under the cost attributable formulation. And that surely is not unreasonable. That's very helpful. Now, you just said... You answered no to a question that I posed, but then you said what we're looking for is the marginal inframarginal cost. And that's exactly the point that I thought I was making, is the reason you're looking at the last part of the curve and you don't really care about ordering in the real world is because, theoretically, you are looking at the marginal inframarginal cost that this product causes. Is that right? Yes, Your Honor. So I agree completely with that formulation. I only resisted your question due to a very technical observation the commission made in the appendix. And the commission said it's not the case that our calculation just goes to the very end. It doesn't matter where we pick from. We can pick from the front of the curve. We can pick from the back of the curve. It's all just mathematically identical to picking from the back of the curve because even if you pick from the front of the curve, everything is just going to shift up. So the objection I had is only to that part of the formulation. I want to ask you about one of UPS's arguments about indirect costs. They say, you know, your brief explains the commission's understanding of what indirect costs means, but your brief does, but the commission's order does not. And they argue we have to remand for an explanation of that. So I take issue with both their characterization of the commission's order and with their proposed remedy. The reason why the commission didn't spend much time talking about indirect costs... Do you agree it didn't? No, no, no, I disagree. It's not there. I mean, it's all in your brief, but it's not in the order. Well, so the order does cite the fact that the commission traditionally uses piggyback costs. And since the 1970s, piggyback costs have been understood to be how the commission figures out what indirect costs are. And you can find a reference to the piggyback costs at, for example, footnote 14 at page 1029 of the joint appendix. And the intervener's brief, this is page 16, footnote 6, also points out several other sources, other commission orders, where the commission has expressly linked piggyback costs to indirect costs. But I think the premise of Your Honor's question is suppose we don't think that that's sufficient. Well, a remand isn't necessary because it would just serve to promote undue delay. And the Taurus Records case that we cite in our brief is illustrative. So there, there was a challenge to a DEA decision. And the agency's letter literally said nothing. But in litigation, the DEA submitted internal memoranda that wasn't previously disclosed between DEA and the Justice Department. Petitioner never saw those documents. And the court held that remand would serve no purpose because the agency could, and no doubt would, simply retransmit those memoranda to petitioner. So here, it's an even stronger case against remand because the agency's reasoning is not in private memoranda. The agency's reasoning about what indirect costs are are contained within previous agency orders. And as we have explained, in these circumstances, a remand would serve no function. So is the part of the indirect costs that are being attributed, those are coterminous with piggyback? I don't know the answer to that question, Your Honor. So I don't want to say that the only indirect costs attributed are piggyback costs. So at least piggyback costs. But at least piggyback costs. Are indirect costs that are being attributed. Right, and that's enough to support what the commission is doing. In other words, because the commission's methodology does give meaning to indirect costs. UPS's argument that only by attributing all inframarginal costs can we give meaning to that part of the statute is incorrect. I just was wondering, is the commission taking steps to get better data on some of these questions, fill out the category of indirect costs and work on what might be further attributed to respond further to UPS's concerns? Yes, Your Honor. So I want to tackle that question with the court's leave in two ways. The first is to emphasize that the commission's order explains why not all indirect costs bear sufficient causal relationship to warrant attribution. So there's no need for additional data in light of that understanding of causation, which is no different from that endorsed in the greeting card case. But if the court's concern is, what's going to happen to all of the inframarginal costs that are not deemed cost attributable? Well, those are going to be considered, quote, institutional costs, and institutional costs are allocated according to a reasonable and appropriate sum to the various competitive products, expressly taking market considerations into account. And so the commission is currently in the process of looking at the present allocation of those institutional costs to the various competitive products. UPS is an active participant in those discussions, and the commission has not yet issued a final order. So the upshot of that... That's under A3. I'm sorry? That's under A3. Yeah, that's correct. That's under A3. And the upshot of that argument is that, you know, it's not the case, as UPS suggests, that if you rule for the commission, inframarginal costs are just going to vanish into the ether, never to be allocated or assigned again. Rather, they're going to be put into the institutional costs bucket, and the total in that bucket is going to be parceled out according to the commission in a reasonable way to account for market factors to ensure that the statutorily mandated price floor is not too low as to promote undue competitive behavior. Unless the court has any further questions, the petition for review should be denied. Thank you. Was Mr. Lincoln out of time? Okay, you can take two minutes. Thank you. Our fundamental position here is that the commission has to justify not only the choices it rejects, but the choices it adopts. The order here... All this conversation would be much easier if the order here actually defined indirect costs. But it doesn't. It nowhere... It's page... I guess it's 1052 of the joint appendix. The order goes through UPS's explanation of what it thinks indirect costs means, but it never provides an answer. Counsel now, before this court, says, well, we think it's just piggyback costs. But the commission has so completely failed to construe the statutory terms that it has to reach back for that definition to testimony from the Postal Service in the 1970s. That's testimony from the regulated entity, not from the regulator. The Postal Commission has to make the decision that it knows what the statute means. It has to define it. And the commission makes exactly that same mistake again when it comes to the issue of the statutory purpose. The commission says, we admit the statutory purpose, section 3633, its purpose is to ensure fair competition. But it never steps back and asks, hey, is using the minimum measure, assuming that all of the products use the smallest and cheapest elements of cost at the bottom of the curve, is that consistent with ensuring fair competition? Instead, the commission says, first, the purpose is to ensure that the Postal Service competes fairly in the provision of competitive products. And then it turns around and says, the purpose of the incremental cost test selected is not to ensure that the Postal Service is competing fairly in the marketplace. If that contradiction is not arbitrary and capricious in its making, it's hard for me to know what would be. Mr. Lampkin, on what basis do you conclude that the volume variable costs don't also include, among them, shared costs? We don't believe the volume variable costs, which is marginal cost, time, product, volume. And then you divide that up according to the cost drivers. That, we don't believe, includes joint costs all either. Because the way you're dividing those up, the way it's done, is if it isn't unequivocally assignable to a particular product, it gets excluded. And the way you can figure out if it's unequivocally assignable in this test is if that product goes away, the cost goes away. But I thought that was sort of done en masse, and that the way you can know that a volume variable cost is attributable is that that level of cost is present even at the lowest point in the curve. And so you don't have to go through and say, well, is this a supervisor, is this an employee, is this a box, is this space in a truck, is this fuel? It could be any number of those things. But it's enough to know that it's accrued by any product. So the volume variable costs are divided up by cost components. And so you figure out the cost of trucking. And you figure out how much of that trucking is used by this particular product, 15%, 15% cost of oil. And you add up all of the different cost components for each product. So you're doing it by formula rather than by a sort of cause in the world. And it just seems to me that it's rife with joint costs. I don't think so, Your Honor, because I think that when they allocate it and say, if you use up 15% of this cost driver, is the technical term they used, then you get attributed 15% of that cost driver. And that works, because if you stop using 15% of that cost driver, 15% of that cost driver goes away. But if the commission's order actually told us what it thought indirect cost means, and it answered what UPS put to it on page 1052 of the joint appendix, we would not be having this conversation. Or at least we'd be having a very different one. Because the agency hasn't even explained its decisions, much less attempted to reconcile them with statutory purpose, we think the judgment must be reversed. Thank you. Thank you both. The case is submitted.
judges: Tatel, Srinivasan, Pillard